[Cite as *Dept. of Youth Servs. v. Mahaffey*, 2014-Ohio-4172.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Department of Youth Services,<br>Circleville Juvenile Correctional Facility, | : | |
| | : | No. 14AP-389 |
| Appellant-Appellant, | | (C.P.C. No. 13CV-11860) |
| | : | and |
| v. | | No. 14AP-396 |
| | : | (C.P.C. No. 13CV-12251) |
| Tim Mahaffey, | | |
| | : | (REGULAR CALENDAR) |
| Appellee-Appellee. | | |
| | : | |

D E C I S I O N

Rendered on September 23, 2014

*Michael DeWine,* **Attorney General,** *Robert E. Fekete* **and** *Amanda L. Scheeser,* **for appellant.**

*Spater & Davis-Williams, LLC,* **and** *C. Raphael Davis-Williams,* **for appellee.**

APPEALS from the Franklin County Court of Common Pleas

CONNOR, J.

{¶ 1} In this consolidated appeal, appellant, Department of Youth Services, Circleville Juvenile Correctional Facility ("DYS"), appeals from a judgment of the Franklin County Court of Common Pleas affirming an order of the State Personnel Board of Review ("SPBR") in favor of appellee, Tim Mahaffey ("appellee").

**A. Facts and Procedural History**

{¶ 2} DYS employed appellee as an Operations Administrator ("OA") in its Circleville Juvenile Corrections Facility ("CJCF") from August 27, 1990 until May 1, 2012, when DYS removed appellee from his position. As an OA, appellee was third in command

at CJCF, behind Superintendent, Ron Edwards and Deputy Superintendent, Karla Stallworth.

{¶ 3} The actions that precipitated appellee's removal began on February 24, 2012, when Youth Specialists, Michael Person and Dwayne Costa, transported a youth offender ("Youth") from CJCF to the New Philadelphia Municipal Court to face charges unrelated to those that had resulted in his commitment to DYS. As a result of the proceedings in New Philadelphia, the municipal court judge dismissed the case against the Youth and expressed the desire to release the Youth from custody. Costa informed the judge that he required CJCF authorization in order to release the Youth. Costa then contacted the CJCF Operations Office and explained the situation to Operations Manager, Elizabeth Zinn-Watson. Zinn-Watson instructed Costa to hold the Youth until she could reach Edwards by telephone for advice. The record shows that Zinn-Watson was not aware that DYS was holding the Youth on another unrelated matter.

{¶ 4} When Zinn-Watson's efforts to contact Edwards by telephone were unsuccessful, she reached appellee, who was her direct supervisor. Zinn-Watson testified at appellee's disciplinary hearing that when she informed appellee of the situation, he advised that "there's no reason for [the Youth] to come back here * * * if the judge is dropping that charge, then [the Youth] can be released." (Tr. 135.) According to Zinn-Watson, appellee did not ask her any questions before authorizing the Youth's release. Operations Manager, Tom Sanders, who was in the Operations office when appellee took the phone call from Zinn-Watson, largely corroborated Zinn-Watson's account of the telephone conversation.

{¶ 5} The decision to release the Youth in New Philadelphia was an error. Not only was DYS obligated to hold the Youth on the other charges, the Youth was released without journalized parole rules and without adult supervision. Upon learning of the error from Edwards, DYS Bureau Chief of Facility Operations, Amy Lynn Ast, contacted the appropriate juvenile court judge who subsequently issued a bench warrant authorizing DYS to take the Youth back into custody.

{¶ 6} Following an internal investigation of the incident and a pre-disciplinary hearing, DYS asked appellee to sign a last-chance agreement in lieu of removal.[1] When appellee refused to sign the agreement, DYS removed him from his position. The stated reasons for the removal were: (1) failure to follow policies and procedure; (2) performance related violations of R.C. 124.34; and (3) failure to follow work assignment or the exercise of poor judgment in carrying out an assignment. None of the other DYS employees who were involved in the incident received discipline.

{¶ 7} Appellee appealed his dismissal to SPBR pursuant to R.C. 124.34. In his administrative appeal, appellee contended that DYS treated him unfairly in comparison to the other similarly situated DYS employees involved in the incident. In its response to appellee's disparate treatment argument, DYS moved for a dismissal of appellee's appeal on the grounds that appellee served in the unclassified civil service and that SPBR did not have jurisdiction of his appeal. Thereafter, on October 3, 2012, DYS submitted a request for a "duties hearing" to determine whether appellee's duties as OA placed him in the unclassified civil service even though DYS designated his position as classified.

{¶ 8} In denying the DYS's request for a duties hearing, SPBR stated: "After a review of the record, to date, it appears that this matter should first proceed to hearing on the merits and, as efficacious, to a subsequent hearing on the issue of whether [appellee] may have served in the unclassified service pursuant to R.C. 124.11(A)(9)." (October 9, 2012 procedural order.) An administrative law judge ("ALJ") subsequently conducted a two-day evidentiary hearing on the merits of appellee's removal. On March 4, 2013, the ALJ issued a "Report & Recommendation," wherein the ALJ found that appellee was guilty of a serious neglect of duty that resulted in the unauthorized release of a juvenile offender, and that DYS was justified in removing appellee from his position. In the alternative, the ALJ recommended that SPBR remand the matter for a hearing to determine whether appellee served in the classified or unclassified civil service.

{¶ 9} Appellee filed objections to the "Report & Recommendation" with SPBR. On July 10, 2013, SPBR held an oral hearing on the objections. On August 2, 2013, SPBR

---

[1] "As used in this section, 'last chance agreement' means an agreement signed by both an appointing authority and an officer or employee of the appointing authority that describes the type of behavior or circumstances that, if it occurs, will automatically lead to removal of the officer or employee without the right of appeal to the state personnel board of review or the appropriate commission." R.C. 124.34(E)

modified appellee's punishment to a 30-day suspension followed by reinstatement. On August 8, 2013, DYS filed a motion for reconsideration wherein DYS argued that SPBR erred by comparing appellee to the other DYS employees involved in the incident. As an alternative to affirming appellee's removal, DYS requested a "duties hearing" for the purpose of determining whether appellee's duties placed him in the classified or unclassified civil service.

{¶ 10} On August 23, 2013, SPBR issued a "Procedural order/Supplementation of the Record" wherein SPBR requested the parties submit additional evidence and argument regarding SPBR jurisdiction. On October 17, 2013, SPBR issued a final order modifying appellee's punishment to a 60-day suspension followed by reinstatement. The order requires reinstatement "60 days following the effective date of * * * removal." SPBR also found that appellee served in the classified civil service.

{¶ 11} SPBR issued a "Corrected" final order on October 29, 2013, wherein SPBR shortened the length of appellee's suspension from 60-days to 30-days, "consistent with the language contained within the Board's requisite final order issued in this matter." On November 7, 2013, DYS filed a timely appeal to the Franklin County Court of Common Pleas from the final order issued by SPBR on October 17, 2013. On January 9, 2014, DYS filed a separate appeal from the "Corrected" final order of October 29, 2013.  The Franklin County Court of Common Pleas consolidated the two administrative appeals, and, on April 22, 2014, the court issued a "Decision to Affirm." On May 13, 2014, DYS filed a timely notice of appeal to this court from each of the two consolidated cases. On June 4, 2014, we consolidated the two appeals "for purposes of record filing, briefing and oral argument."[2]

## B. Assignments of Error

{¶ 12} DYS assigns the following errors:

> [I.] Whether the Court of Common Pleas erred in failing to apply the precedents of this Court and the Ohio Supreme Court when it affirmed the State Personnel Board of Review's order finding that Tim Mahaffey was similarly situated to his subordinates for the purpose of disparate treatment and/or selective application of the rules.

---

[2] On June 6, 2014, we stayed execution of judgment during the pendency of this appeal.

> [II.] Whether the Court of Common Pleas erred as a matter of law in finding that the Department of Youth Services waived jurisdiction and/or that the State Personnel Board of Review made a proper jurisdictional finding.

## C. Standard of Review

{¶ 13} In an administrative appeal, pursuant to R.C. 119.12, the trial court reviews the agency's order to determine whether it is supported by reliable, probative and substantial evidence and is in accordance with the law. To some extent, this standard of review permits the court of common pleas to substitute its judgment for that of the administrative agency. The court must, however, "give due deference to the administrative resolution of evidentiary conflicts." *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 111 (1980).

{¶ 14} Ordinarily, on appeal to this court, the standard of review is more limited. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993). Unlike the court of common pleas, a court of appeals does not determine the weight of the evidence. *Rossford Exempted Village School Dist. Bd. of Edn. v. State Bd. of Edn.,* 63 Ohio St.3d 705, 707 (1992). In reviewing the court of common pleas' determination that the agency's order is or is not supported by the requisite quantum of evidence, the appellate court's role is limited to determining whether the court of common pleas abused its discretion. *Hartzog v. Ohio State Univ.,* 27 Ohio App.3d 214, 216 (10th Dist.1985).

{¶ 15} However, in reviewing purely legal questions, an appellate court has de novo review. *Big Bob's, Inc. v. Ohio Liquor Control Comm.*, 151 Ohio App.3d 498, 2003-Ohio-418, ¶ 15 (10th Dist.). Indeed, when considering the question whether the SPBR's order is in accordance with the law, our review is plenary. *Glasstetter v. Rehab. Servs. Comm.*, 10th Dist. No. 13AP-932, 2014-Ohio-3014, citing *Weiss v. State Med. Bd. of Ohio*, 1oth Dist. No. 13AP-281, 2013-Ohio-4215, ¶ 15.

## D. Legal Analysis

{¶ 16} Because we believe that the jurisdictional issue raised in the second assignment of error is dispositive of this appeal, we shall consider it first.

{¶ 17} R.C. 124.03 provides in relevant part:

(A) The state personnel board of review shall exercise the following powers and perform the following duties:

(1) Hear appeals, as provided by law, of employees *in the classified state service* from final decisions of appointing authorities or the director of administrative services relative to * * * discharge.

(Emphasis added.)

{¶ 18} SPBR has the statutory authority to hear and determine appeals of only those employees who serve in the classified state service. *Kingsley v. Ohio State Personnel Bd. of Review*, 10th Dist. No. 10AP-875, 2011-Ohio-2227, ¶ 25. SPBR does not have jurisdiction to hear appeals of employees who are unclassified. *Id.* An unclassified employee is appointed at the discretion of the appointing authority and serves at the pleasure of such authority. *State ex rel. Hunter v. Summit Cty. Human Resource Comm.*, 81 Ohio St.3d 450, 453 (1998). "In particular, R.C. 124.11(A) identifies thirty-two positions that are in the 'unclassified service.' " *Malhotra v. Montgomery Cty. Juvenile Ct.,* 2d Dist. No. 25943, 2014-Ohio-1861, ¶ 8. DYS argues that appellee's duties place him within the unclassified civil service pursuant to R.C. 124.11(A)(9), which reads, in pertinent part, as follows:

(A) The unclassified service shall comprise the following positions, which shall not be included in the classified service, and which shall be exempt from all examinations required by this chapter:

* * *

(9) The deputies and assistants of state agencies authorized to act for and on behalf of the agency*, or holding a fiduciary or administrative relation to that agency*.

(Emphasis added.)

{¶ 19} The test for determining whether a public employee serves in the classified or unclassified civil service pursuant to R.C. 124.11(A)(9) requires an examination of the duties actually delegated to and performed by the employee. *State ex rel. Barley v. Ohio Dept. of Job & Family Servs.*, 132 Ohio St.3d 505, 2012-Ohio-3329, ¶ 22, citing *In re Termination of Emp. of Pratt*, 40 Ohio St.2d 107, 113-14 (1974). In *Barley,* the Supreme

Court of Ohio acknowledged the "longstanding precedent that the job title or position classification used by the appointing authority is not dispositive on the issue whether a public employee is in the classified or unclassified service." *Id.* at ¶ 22, citing *In re Termination of Emp. of Pratt*; *State ex rel. Emmons v. Guckenberger*, 131 Ohio St. 466, 469 (1936). *See also Olander v. Ohio Environmental Protection Agency*, 134 Ohio App.3d 723, 726 (10th Dist.1999).

{¶ 20} DYS advanced its jurisdictional argument in the trial court as an alternative grounds for relief in the event that the trial court accepted appellee's disparate treatment claim. The trial court made the following determination in its decision with regard to the jurisdictional issue:

> An additional issue raised by appellant in this appeal concerns appellant's request that this court remand this action back to the board for an additional hearing to consider whether appellee served in the unclassified service, a finding that would have precluded the board's jurisdiction to hear appellee's appeal. Appellee opposes that request and notes that appellant had a number of opportunities to raise this issue at the proper time. Indeed, appellant was invited by the board to submit to it additional evidence that the board should consider. Appellant failed to submit sufficient evidence and argument that would demonstrate improper classification. Accordingly, this court rejects the invitation to remand.

{¶ 21} SPBR is an administrative body that derives its jurisdiction from R.C. Chapter 124 and possesses only the authority conferred thereby. *Khalaq v. Ohio Environmental Protection Agency*, 10th Dist. No. 09AP-963, 2011-Ohio-1087, ¶ 15, citing *Ketron v. Ohio Dept. of Transp.*, 61 Ohio App.3d 657, 659; *Hansen v. State Personnel Bd. of Review,* 51 Ohio App.2d 7, 13 (8th Dist.1977).  "The authority conferred upon the SPBR by the General Assembly may not be extended by a party's failure to raise an argument." *Id.* at ¶ 16.  "Indeed, the issue of [SPBR's] subject-matter jurisdiction may not be waived and, instead, may be raised at any time." *Id.* Accordingly, there is no merit in appellee's contention that DYS waived the right to argue that appellee served in the unclassified civil service by failing to timely raise the issue with SPBR.  Moreover, as noted above, DYS filed a "Notice of Assertion of Unclassified Status" with SPBR on October 3, 2012. Therein, DYS asserts that appellee "served as a fiduciary and/or administrative relation to the

agency under R.C. §124.11(A)(9)," and "requests a duties hearing to determine appellant's classification at the time of his removal." Thus, the administrative record establishes that DYS raised the jurisdictional issue more than five weeks before the ALJ conducted the merits hearing.

{¶ 22} The burden of proving the unclassified status of a public employee is set forth in Ohio Adm.Code 124-7-04 as follows:

> When an employee has been adversely affected as an unclassified employee, the burden of proving the unclassified status of the employee is on the appointing authority. *The board will take evidence of the employee's duties over a reasonable period of time, which is generally defined as at least two calendar years immediately prior to the adverse action,* provided that the employee was in an active work status during that time period.

(Emphasis added.)

{¶ 23} In denying DYS's motion for a duties hearing, SPBR stated: "After a review of the record, to date, it appears that the matter should first proceed to hearing on the merits and, as efficacious, to a subsequent hearing on the issue of whether [appellee] may have served in the unclassified service pursuant to R.C. 124.11(A)(9)." (October 9, 2012 procedural order.) As a consequence of SPBR's October 9, 2012 procedural order, the transcript of proceedings before the ALJ reveals very little in the way of testimony or other probative evidence regarding appellee's duties. The bulk of the evidence was offered to prove or disprove the specific facts and circumstances underlying appellee's discipline. Appellee also offered evidence regarding the issue of disparate treatment under Ohio Adm.Code 124-9-11. Eliciting evidence of appellee's duties as OA during the relevant time period, as would be required by R.C. 124. 11(A)(9) and Ohio Adm.Code 124-7-04, was clearly not the focus of the evidentiary hearing before the ALJ nor was it the focus of the initial appeal to SPBR. Indeed, SPBR's procedural order of October 9, 2012, essentially precluded DYS from producing evidence of appellee's duties when offered to support its claim that appellee held an administrative or fiduciary relation to DYS. Consequently, the administrative record contains evidence regarding appellee's duties only to the extent that such evidence was probative of the other issues in the case.

{¶ 24} DYS asserts in their brief that appellee was "essentially serving as the third in-command at CJCF, supervising Operations Managers and Youth Specialists and making high-level decisions related to the security, safety, custody and control of the youth housed at CJCF." Appellee's testimony before the ALJ arguably supports this assertion. DYS also refers to appellee's employment with DYS as a "high-level administrative position that required exceptional judgment." (Appellant's brief, 3.) Appellee's testimony arguably supports this assertion as well. DYS further contends that appellee "drafted institutional operational policy and procedures" for CJCF. (Appellant's brief, 5.) Appellee testified about these policies in the proceedings before the ALJ and the policies were admitted into evidence at the hearing. (Tr. 308.)

{¶ 25} In its order of October 17, 2013, SPBR stated that "there is at least some evidence in the record that [Mahaffey's] duties were actually *more* restricted than were those of other OAs." (Emphasis sic.) SPBR does not, however, specify the evidence upon which it relies. The board order also states that "the unrebutted suggestion in the testimony presented at hearing that [Mahaffey's] duties were actually more restricted than all the other OAs further militates against [DYS's] assertion that that [Mahaffey] served as a fiduciary to the agency * * * and was imbued with a special trust and confidence far above the average OA at the [DYS]." Again, the board does not identify the specific testimony upon which it relies. Moreover, as noted above, the hearing before the ALJ was held for the sole purpose of determining the merits of appellee's disciplinary appeal, not appellee's duties.

{¶ 26} The trial court nevertheless determined that SPBR gave DYS the opportunity to produce evidence of appellee's duties but that DYS failed or refused to do so. We disagree with the trial court's characterization of the SPBR proceedings.

{¶ 27} SPBR issued its procedural order of August 23, 2013, for the purpose of reconsidering whether it had jurisdiction of the appeal. The procedural order provides, in relevant part, as follows:

> [DYS] is to file with this Board and with [Mahaffey's] counsel, on or before September 18, 2013 a list of all positions at the Department of Youth Services (DYS) assigned to Pay Range 13 ([Mahaffey's] Pay Range at the time of his removal) with a focus on the period of time spanning the approximate four weeks falling prior to the effective date of [Mahaffey's]

removal. [DYS] is further to indicate whether each position on that list was, at that time, carried in the classified or, conversely, in the unclassified service. Additionally, with this filing, [DYS] is to list all DYS Operations Administrator (OA) positions that were carried on DYS' table of organization during that same approximate four week time period. [DYS] is to indicate how each of those OA positions was designed (i.e. classified or unclassified) during that time period. Finally, with its supplementation, [DYS] may file with this Board and with [Mahaffey's] counsel on or before September 18, 2013 [DYS'] supplemental narrative and commentary concerning the supplementation ordered herein, with [DYS'] optional supplemental narrative and commentary not to exceed 20 pages.

{¶ 28} By its procedural order, SPBR asks DYS to provide a list of positions in appellee's pay range and to indicate whether DYS considered those positions to be in the classified or unclassified civil service. However, as noted above, the position classification used by DYS is clearly not dispositive of the issue of whether a public employee is in the classified or unclassified service. *Barley.* The August 23, 2013 order does not even use the word "duties." Additionally, the order expressly confines the analysis to a four-week period rather than a period of "at least two calendar years" as recommended in Ohio Adm.Code 124-7-04. Although SPBR invites DYS to submit a supplemental narrative, it restricts the narrative to the supplementation "permitted by the order."

{¶ 29} When SPBR denied DYS's initial request for a duties hearing on October 9, 2012, SPBR stated: "After a review of the record, to date, it appears that this matter should first proceed to hearing on the merits and, as efficacious, to a subsequent hearing on the issue of whether [appellee] may have served in the unclassified service pursuant to R.C. 124.11(A)(9)." Although SPBR's October 9, 2012 procedural order contemplated the need to remand the case to the ALJ for the purpose of holding a duties hearing, SPBR never ordered a remand. Rather, SPBR issued the procedural order of October 23, 2013, in an effort to supplement the record. In our opinion, the supplementation ordered by SPBR is a poor substitute for an evidentiary hearing. In fact, SPBR acknowledged the deficiencies in the record in its order dated October 17, 2013, when it stated that consideration of appellees duties "focused more on the performance of those duties *vis a vis* the allegations [DYS] lodged against [Mahaffey]." (Emphasis sic.)

{¶ 30} The trial court found that DYS failed to produce evidence that appellee served in the unclassified civil service when SPBR offered DYS the opportunity to do so. Our review of the record establishes that SPBR did not afford DYS a fair opportunity to present relevant evidence in support of its contention that appellee held a fiduciary or administrative relation to DYS. And, even though SPBR never held an evidentiary hearing to determine whether appellee served in the unclassified civil service, there was evidence adduced at the merits hearing which would arguably support a finding that appellee held an administrative or fiduciary relation to DYS. Inasmuch as DYS raised the issue of appellee's employment status in proceedings before SPBR, and because evidence admitted at the merits hearing gave rise to a genuine jurisdictional issue, it is our determination that SPBR became obligated to hold a proper duties hearing. *See Chubb v. Bur. of Workers' Comp.*, 10th Dist. No. 96APE03-292 (Sept. 26, 1996) (where SPBR errs in finding that an employee served in the unclassified civil service, as a matter of law, the case will be remanded to SPBR for a hearing to determine whether the employee's actual duties place her in the unclassified civil service pursuant to R.C. 124.11(A)(9).)[3]; *Kyle v. Ohio State Univ.*, 10th Dist. No. 13AP-603, 2014-Ohio-2143,¶ 24 (case remanded for SPBR to determine "in the first instance * * * whether the employee voluntarily resigned his position and therefore, whether SPBR has jurisdiction to further consider [the employee's] claims"). *See also Kingsley v. Ohio State Personnel Bd. of Rev.,* 10th Dist. No. 10AP-875, 2011-Ohio-2227, ¶ 46 (concurring opinion.)

{¶ 31} The procedural order of October 9, 2012, anticipated a remand to the ALJ for an evidentiary hearing on the disputed jurisdictional issue. The supplemental evidence and narrative statement requested by SPBR in this case is not a reasonable substitute for testimonial evidence regarding the duties actually delegated to and performed by appellee. Thus, we agree with the trial court that the administrative record does not contain sufficient evidence for the court to determine, with any degree of confidence, whether appellee served in the classified or unclassified civil service.[4] However, we do not

---

[3] Judgment affirmed in *Chubb v. Ohio Bur. of Workers' Comp.,* 81 Ohio St.3d 275 (1998).

[4] R.C. 119.12 limits the authority of the common pleas court in relevant part as follows: "Unless otherwise provided by law, in the hearing of the appeal, the court is confined to the record as certified to it by the agency. Unless otherwise provided by law, the court may grant a request for the admission of additional evidence when satisfied that the additional evidence is newly discovered and could not with reasonable diligence have been ascertained prior to the hearing before the agency."

agree with the trial court's conclusion that DYS had a fair opportunity to produce evidence in support of its contention that appellee held an administrative or fiduciary relation to DYS. The administrative record shows that SPBR never conducted an evidentiary hearing for the purpose of determining the duties actually delegated to and performed by appellee over a reasonable period of time. Under the circumstances, such a hearing was required in order for SPBR to properly determine whether it had jurisdiction to determine the merits of appellee's R.C. 124.34 appeal. Accordingly, we hold that the trial court erred, as a matter of law, when it refused to remand the case to SPBR for a proper duties hearing, and we sustain the second assignment of error.

{¶ 32} Furthermore, absent sufficient evidence in the record to establish SPBR jurisdiction, the trial court was without jurisdiction to consider the merits of appellee's disciplinary appeal. For the same reasons, we are not in a position to determine whether competent, credible evidence supports the board's decision to modify appellee's punishment.  Accordingly, the first assignment of error is rendered moot. *See Bush v. Licking Cty. Child Support Enforcement Agency*, 10th Dist. No. 11AP-101, 2011-Ohio-3999, ¶ 19.

### E. Conclusion

{¶ 33} Having rendered appellant's first assignment of error as moot, but having sustained appellant's second assignment of error, we reverse the judgment of the Franklin County Court of Common Pleas and remand the case for further proceedings consistent with this opinion.

*Judgment reversed; case remanded.*

SADLER, P.J., and O'GRADY, J., concur.