[Cite as *Watson v. Columbus State Community College*, 2016-Ohio-3037.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Yvonne Watson, | : | |
| Appellant-Appellant, | : | No. 15AP-1009 |
| | | (C.P.C. No. 15CV-2640) |
| v. | : | |
| | | (ACCELERATED CALENDAR) |
| Columbus State Community College, | : | |
| Appellee-Appellee. | : | |

---

D E C I S I O N

Rendered on May 17, 2016

---

**On brief:** *William J. O'Malley*, for appellant. **Argued:** *William J. O'Malley*.

**On brief:** *Michael DeWine*, Attorney General, and *Timothy M. Miller*, for appellee. **Argued:** *Timothy M. Miller.*

---

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, P.J.

{¶ 1} Appellant-appellant, Yvonne Watson, appeals the October 8, 2015 decision and judgment entry of the Franklin County Court of Common Pleas which affirmed the March 12, 2015 order of the State Personnel Board of Review ("board"). For the following reasons, we reverse the judgment of the court of common pleas.

**I. Facts and Procedural History**

{¶ 2} Appellee-appellee, Columbus State Community College, employed appellant until her termination on February 26, 2013. On March 27, 2013, appellant appealed her termination to the board, asserting that she was discharged without just cause and without an order as provided under R.C. 124.34. The matter was referred to an administrative law judge ("ALJ"). On April 24, 2013, the ALJ filed a procedural order

instructing appellee to file a response to a questionnaire in order to determine whether the board had jurisdiction over appellant's appeal.

{¶ 3}   On May 23, 2013, appellee filed responses to the questionnaire regarding appellant's removal in which appellee asserted that appellant was an unclassified employee.   On June 4, 2013, appellant filed a response to appellee's statement that appellant was an unclassified employee.   On July 22, 2013, the ALJ issued a procedural order finding that a record hearing was required to determine whether appellant was a classified or unclassified employee at the time of removal because the board does not possess jurisdiction over the removal of an unclassified employee.

{¶ 4}   On October 2, 2013, the date scheduled for a record hearing on the matter, the parties informed the ALJ that they had reached a settlement agreement.   The ALJ then conducted the hearing on the record regarding settlement negotiations.   Appellant, appellant's counsel, and appellee's counsel were present at the hearing.   On the same date, the ALJ filed a notice of continuance pending settlement.   The notice provided that "[a] validly executed settlement agreement, notice of settlement, a dismissal, or withdrawal by the Appellant must be received on or before November 4, 2013, or this case will be rescheduled for record hearing."

{¶ 5}   On December 11, 2013, appellant filed a motion for a hearing asserting that the parties had been unable to complete a written settlement agreement.   On December 20, 2013, appellee filed a memorandum contra responding that the parties had entered into an enforceable agreement that was read into the record.   On December 27, 2013, appellant filed a reply memorandum.   On January 24, 2014, the ALJ held a status conference with the parties, at which time he granted appellant's motion to schedule a hearing on the merits.   On January 28, 2014, the ALJ filed a procedural order reflecting the outcome of the January 24, 2014 status conference.

{¶ 6}   On March 7, 2014, the ALJ held a hearing on the merits.   On August 29, 2014, the ALJ filed a report and recommendation, in which he found that "CSCC failed to meet its burden of proving that Ms. Watson was serving as an unclassified employee at the time of her removal."   (Report and Recommendation, 17.)   As a result, the ALJ recommended that the board disaffirm appellee's removal of appellant pursuant to R.C. 124.03, 124.14, and 124.34 and reinstate appellant.   On September 19, 2014, appellee filed

objections to the August 29, 2014 report and recommendation. On October 6, 2014, appellant filed a response to appellee's objections.

{¶ 7} On January 7, 2015, the board conducted an oral argument regarding the objections to the August 29, 2014 report and recommendation. On March 12, 2015, the board issued an order finding that the parties settled the appeal. As a result, the board concluded it was without jurisdiction and dismissed the appeal. On March 26, 2015, appellant appealed the board's order to the common pleas court. After being fully briefed by the parties, on October 8, 2015, the common pleas court filed a decision and judgment entry affirming the decision of the board.

## II. Assignment of Error

> The Common Pleas Court committed reversible error when it determined that Ms. Watson's Case Before the State Personnel Board of Review Was Settled on October 2, 2013 and Therefore The State Personnel Board of Review Ceased to Have Jurisdiction Over Her Removal.

## III. Discussion

{¶ 8} In her sole assignment of error, appellant asserts the common pleas court erred by finding that the parties settled the case, thereby depriving the board of jurisdiction. Specifically, appellant contends that (1) there was no meeting of the minds with regard to the essential terms of the settlement; (2) the parties intended that any agreement would be reduced to a signed writing; (3) the proposed written settlement agreement provided that appellant could revoke the agreement within a specific period of time; and (4) appellee never provided the consideration promised under the terms of the settlement agreement.

{¶ 9} In an administrative appeal under R.C. 119.12, a common pleas court reviews the entire record and determines whether an agency's order is supported by reliable, probative, and substantial evidence and is in accordance with law. *Leslie v. Ohio Dept. of Dev.*, 171 Ohio App.3d 55, 2007-Ohio-1170, ¶ 43 (10th Dist.), citing *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 110-11 (1980). In reviewing the administrative record, the common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, though such resolution is not conclusive or binding on the common pleas court. *Id.*, citing *Conrad* at 111.

{¶ 10} On appeal, the standard of review is even more limited. An appellate court applies an abuse of discretion standard when reviewing a common pleas court's determination of whether an agency's order was supported by reliable, probative, and substantial evidence. *Id.* at ¶ 44, citing *Roy v. Ohio State Med. Bd.*, 80 Ohio App.3d 675, 680 (10th Dist.1992). The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). However, when considering whether the agency's order is in accordance with law, our review is plenary. *Dept. of Youth Servs. v. Mahaffey*, 10th Dist. No. 14AP-389, 2014-Ohio-4172, ¶ 15; *Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd.*, 63 Ohio St.3d 339, 343-44 (1992).

{¶ 11} A settlement agreement is a contract designed to terminate a claim by preventing or ending litigation. *Infinite Sec. Solutions, L.L.C. v. Karam Props. II*, 143 Ohio St.3d 346, 2015-Ohio-1101, ¶ 16. " 'A contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration.' " *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, ¶ 16, quoting *Perlmuter Printing Co. v. Strome, Inc.*, 436 F.Supp. 409, 414 (N.D.Ohio 1976). *See also Rayess v. Educational Comm. for Foreign Med. Graduates*, 134 Ohio St.3d 509, 2012-Ohio-5676, ¶ 19. "A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract." *Kostelnik* at ¶ 16, citing *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations*, 61 Ohio St.3d 366, 369 (1991).

{¶ 12} Although it is preferable to memorialize a settlement agreement in a written document, "an oral settlement agreement may be enforceable if there is sufficient particularity to form a binding contract." *Id.* at ¶ 15, citing *Spercel v. Sterling Industries, Inc.*, 31 Ohio St.2d 36, 39 (1972). Terms of an oral contract may be determined from " 'words, deeds, acts, and silence of the parties.' " *Id.*, quoting *Rutledge v. Hoffman*, 81 Ohio App. 85 (12th Dist.1947), paragraph one of the syllabus.

{¶ 13} " 'To constitute a valid settlement agreement, the terms of the agreement must be reasonably certain and clear.' " *Id.* at ¶ 17, quoting *Rulli v. Fan Co.*, 79 Ohio St.3d

374, 376-77 (1997).  " 'Vagueness of expression, indefiniteness and uncertainty as to any of the essential terms of an agreement, have often been held to prevent the creation of an enforceable contract.' "  *Rulli* at 376, quoting 1 *Corbin on Contracts*, Section 4.1, 525 (Rev.Ed.1993).  "However, 'all agreements have some degree of indefiniteness and some degree of uncertainty.' "  *Kostelnik* at ¶ 17, quoting 1 *Corbin on Contracts*, Section 4.1, 530 (Perillo Rev.Ed.1993).  Where there is a factual dispute regarding a settlement agreement, the court should conduct "an evidentiary hearing to resolve the parties' dispute about the existence of an agreement or the meaning of its terms as read into the record at the hearing, before reducing the matter to judgment." *Rulli* at 377.

{¶ 14}  In *Rulli*, the Supreme Court of Ohio examined whether a trial court abused its discretion by ordering the enforcement of a disputed settlement agreement without first conducting an evidentiary hearing.  In that case, the parties agreed in a hearing before the trial court that they had reached a settlement purporting to resolve all disputed matters.  Counsel for one of the parties then read into the record the terms of the agreement.  The parties, upon being questioned by the court, then indicated that they understood the parameters of the agreement and agreed to be bound to it.  The trial court judge then stated that he would mark the case as called for a hearing, settled, and dismissed, and gave counsel 21 days to submit a separate judgment entry.  The trial court then filed a judgment entry reflecting this disposition.  However, the parties never filed a separate entry or completed a formal purchase agreement as contemplated by the terms discussed at the hearing.

{¶ 15}  Instead, the defendants filed a motion to enforce the purported agreement, in which they disputed the meaning of statements read into the record at the prior hearing.  The plaintiff contested the defendants' interpretation, stating that no final agreement had been reached and filed a motion to vacate the trial court's prior entry.  Plaintiff attempted to introduce as evidence an unsigned 11-page settlement agreement and an affidavit by counsel stating his inability to conclude the agreement.  The trial court heard oral arguments on both motions and found that the parties had reached a settlement at the prior hearing.  The trial court ordered judgment pursuant to the defendants' interpretation of the agreement, without considering any evidence that the plaintiff attempted to introduce.

{¶ 16} On review, the Supreme Court found that "[t]hough upon first examination, the settlement terms as read into the record * * * appear reasonably clear, the parties were subsequently unable to agree upon the meaning and effect of those terms." *Rulli* at 376. As evidence of this, the Supreme Court found the parties "were unable to execute a formal purchase agreement and they did not provide the court with an entry as ordered by the court," but instead "offered varying interpretations of the terms read into the record, and disputed nearly every major element of the purported agreement." *Id.* at 376-77. As a result, the Supreme Court found that "the language read into the record at the initial hearing reflects, at best, merely an agreement to make a contract." *Id.* at 377. Furthermore, the Supreme Court stated that "[w]here parties dispute the meaning or existence of a settlement agreement, a court may not force an agreement upon the parties" because "[t]o do so would be to deny the parties' right to control the litigation, and to implicitly adopt (or explicitly, as the trial court did here) the interpretation of one party, rather than enter judgment based upon a mutual agreement." *Id.* The Supreme Court reversed the trial court's judgment and remanded the matter for the trial court to conduct an evidentiary hearing to resolve the parties' dispute about the existence of an agreement or the meaning of the terms as read into the record at the hearing.

{¶ 17} Here, like in *Rulli*, the parties indicated they had reached a settlement agreement and then read the terms of the purported agreement into the record at the October 2, 2013 hearing. Although the terms read into the record by appellant's counsel appear reasonably clear, there were several instances where the parties noted that they had not reached a final agreement on particular terms, or that the meaning of such terms was unclear and would need to be resolved through further negotiation. This is reflected in the discussion between the ALJ, appellant's counsel, appellee's counsel, and appellant:

> [ALJ]: I believe at this point it has been communicated to me off the record that the parties have reached a settlement agreement. Is that correct?
>
> [Appellee's Counsel]: That's correct, your honor.
>
> [Appellant's Counsel]: Yes, that's correct.
>
> [ALJ]: Okay. And do you want to read the terms of the agreement into the record, please?

[Appellant's Counsel]: I'll take a stab at it, if I may.

* * *

[Appellant's Counsel]: Columbus State shall provide [appellant] with a letter which states -- and I'm paraphrasing here --

[Appellee's Counsel]: Go ahead.

[Appellant's Counsel]: -- *We're going to have to nail this down a little bit* -- but [appellant] was an employee of Columbus State from this date to that date.

* * *

During her tenure at Columbus State at every evaluation period she met the expectation of her position and she is eligible for rehire.

Columbus State shall pay [appellant] in lump sum. Columbus State will not challenge [appellant's] unemployment compensation. I believe the appeal time has ran [sic] to appeal, anyway, but *we do want that in the settlement letter.*

[Appellee's Counsel]: No problem.

* * *

[Appellant's Counsel]: [Appellant] wanted to mention something -- something put -- that *something get put in the settlement agreement* that says in the event there is a breach of the settlement agreement in terms of an adverse comment being made against her, she will have recourse against Columbus State for breach of the settlement agreement itself. In other words, if they're agreeing to give neutral references --

[Appellee's Counsel]: Yes.

[Appellant's Counsel]: -- And if someone says well, you know, she was a lousy employee and, you know -- then that's a breach of the -- the terms of the agreement so she wants to have --

[ALJ]: She would always have that if that was the settlement agreement --

[Appellant's Counsel]: I would agree, but --

[Appellee's Counsel]: *I think we can probably come to a meeting on some type of language to put in there about, you know, if there's a -- you know, a breach of the contract -- or a breach of the agreement, the parties, you know --*

[Appellant's Counsel]: Have recourse --

* * *

[Appellee's Counsel]: Yes. *I think we can come to some agreement on the type of language in that respect, but, yes, I think that -- that pretty much summarizes, I think, what we discussed as far as the terms of the agreement.*

[ALJ]: Okay. [Appellant], you just heard the terms of the agreement he read into the record. Is that your understanding?

[Appellant]: Yes, your honor.

[ALJ]: Did you do this knowingly and willingly?

[Appellant]: Yes, Your honor.

(Emphasis added.) (Oct. 2, 2013 Tr. 4-8.)

{¶ 18} Thus, on further review, it is apparent that the language read into the record at the October 2, 2013 hearing "reflects, at best, merely an agreement to make a contract." *Rulli* at 377. *See Ruffian, L.L.C. v. Hayes*, 10th Dist. No. 09AP-948, 2011-Ohio-831, ¶ 38. This is reinforced by the ALJ's October 2, 2013 procedural order which stated that "[a] validly executed settlement agreement, notice of settlement, a dismissal, or withdrawal by the Appellant must be received on or before November 4, 2013, or this case will be rescheduled for record hearing." The parties did not file any of the requested items on or before November 4, 2013. Instead, on December 11, 2013, appellant filed a motion for a hearing, asserting that the parties had been unable to complete a written settlement agreement. In additional briefing, both parties disputed the meaning of additional language that was not discussed at the October 2, 2013 hearing but that was included in a proposed written agreement drafted by appellee. Appellant also argued that appellee rejected all her proposed changes to the written agreement drafted by appellee. However,

the proposed written agreement does not appear in the record before us and, therefore, we are unable to review the agreement to determine whether it is consistent with the terms read into the record on October 2, 2013.[1]

{¶ 19} Additionally, it is appellant's contention that appellee added to or altered the terms of the agreement that the parties read into the record before the ALJ. Specifically, appellant points to the term discussed at the October 2, 2013 hearing in which it was stated that appellant was "eligible for rehire." (Oct. 2, 2013 Tr. 6.) Appellant contends that the written agreement proposed by appellee explicitly prohibited appellant from reapplying for employment with appellee. Importantly, appellee does not contest that the written agreement differed from the terms discussed at the October 2, 2013 hearing. At oral argument, appellee argued that the parties never intended for appellant to be eligible for rehire and that the statement to the contrary at the October 2, 2013 was made in error. This demonstrates that there was not a meeting of the minds between the parties on an essential term of the purported settlement agreement, i.e., whether appellant was eligible for rehire.

{¶ 20} At the January 24, 2014 hearing on appellant's December 11, 2013 motion, the ALJ reviewed the status of the parties' settlement negotiations. Specifically, after the parties stated their names for the record, the ALJ noted that discussions regarding the settlement agreement had taken place off the record and then summarized the history of the settlement negotiations:

> [ALJ]: Thank you. Just for the record, you know, we have had some discussions.
>
> * * *
>
> The record hearing in this matter was set down October 2nd, 2013, and I pretty much told the parties at the start of the record hearing that day at 10:00 o'clock that we're ready to go because you guys had plenty of time. I believe at that time the parties said again we're close to settling.
>
> And I believe it was a pretty long, tedious process, and it wasn't until about, I think, 2:00 p.m. that day that there was a

---

[1] We note that appellant attached as an exhibit to her December 27, 2013 reply memorandum an excerpt of the purported written settlement agreement as drafted by appellee.

tentative settlement reached by the parties. And the parties did read into the record the terms of the settlement agreement into this Board's digital recording system that afternoon and there was -- various things were discussed in here.

However, as pointed out in both appellant's motion and appellee's memorandum in opposition, I believe that there were some things that maybe -- and I know we've been off the record and I'll let the parties argue this if they wish to argue it after I make the ruling -- but there were numerous things, I believe that -- maybe that were just things that were not perceived like they should have been perceived, a little bit of miscommunication with regard to maybe the terms and conditions of this -- of this -- of the thing -- of the agreement.

And also, I take note of [appellant's counsel's] rendition of the reference of *the revocation of the agreement was not mentioned even at the -- I don't recall that being mentioned at the -- at the settlement agreement on the record*. I knew there was a waiver of any and all claims, but I don't specifically remember that.

And also, I guess in terms, as discussed by the appellant off the record -- and I'm doing my best to -- she really didn't understand the waiver fully. *There were some questions regarding future employment, not specifically with the employment as a supervisor one or program coordinator, but maybe as an adjunct professor. And that was not really fully discussed or disclosed if that was -- just any and all employment.* Whether it was a secretary on up to the president, it wasn't really fully discussed.

So I don't believe in her mind and the -- there was a letter, I believe, was -- *I think she wanted the letter to be a little more specific than what the letter was going to be*. She had a chance to review that, but somehow that got mixed up in the - in the going back and forth.

And so some of these things I just feel that you will go ahead -- and I'm going to grant appellant's motion to put the hearing back on the record -- back on the docket and we'll have this case heard on the merits.

(Emphasis added.) (Jan. 24, 2014 Tr. 4-7.)  Thus, the ALJ found that the parties differed on several aspects of the purported settlement agreement and concluded that the matter

should proceed to a hearing on the merits. Thereafter, the ALJ conducted a hearing on the merits of appellant's appeal and issued a report and recommendation, finding that appellant was unlawfully terminated.

{¶ 21} Nevertheless, the board, in its review of the ALJ's August 29, 2014 report and recommendation, found that it lacked jurisdiction to consider the matter because it found that the parties had effectuated an oral settlement at the October 2, 2013 hearing. The board came to this conclusion even though the parties did not raise the issue of the settlement agreement before the board. In its September 19, 2014 objections to the August 29, 2014 report and recommendation of the ALJ, appellee did not argue that the matter had already been settled, but, instead, disputed only the ALJ's finding that appellant was a classified employee at the time of her termination. Additionally, the question of whether the parties entered into a valid settlement agreement was not discussed at the January 7, 2015 oral argument before the board. The board also did not hold an evidentiary hearing on the subject. Instead, in its March 12, 2015 order, the board appears to have sua sponte reached the conclusion that the parties had entered into an enforceable settlement agreement that deprived the board of jurisdiction to consider the appeal.[2]

---

[2] We note, although neither party addressed the same, the provisions of the Ohio Administrative Code that govern settlements of appeals before the board. Ohio Adm.Code 124-11-20 provides, in pertinent part, as follows:

> (B) An appeal may be settled by the parties thereto any time prior to the issuance of a final order of the board. The board will accept signed settlement agreements and incorporate them into its final order. All notices of settlement shall be filed with the board, and shall be signed by all affected parties and their representatives.
>
> (C) If the board is notified a case has been withdrawn or settled, and no settlement agreement or withdrawal notice is filed with the board within the time frame set by the board, then the board shall schedule the case for a hearing.

Here, no signed notice of settlement was filed with the board, nor did the board incorporate a signed settlement agreement into its final order. Even if we were to construe the parties' statements at the October 2, 2013 hearing before the ALJ as providing notice that the case had been settled, the parties never filed a settlement agreement by November 4, 2013 as ordered by the October 2, 2013 notice of continuance pending settlement. Since "no settlement agreement or withdrawal notice [was] filed with the board within the time frame set by the board," the board was required to "schedule the case for a hearing." Ohio Adm.Code 124-11-20(C).

{¶ 22}  Therefore, for the reasons outlined above, we find that the common pleas court abused its discretion by affirming the judgment of the board.  *See Beasley v. ANG, Inc.*, 10th Dist. No. 12AP-1050, 2013-Ohio-4882, ¶ 14.  On remand, the board must hold an evidentiary hearing[3] to resolve the parties' dispute about the existence of an agreement or the meaning of the terms as read into the record at the October 2, 2013 hearing.  *Rulli* at 377. *See also Jones v. Mellinger*, 7th Dist. No. 13 CO 11, 2014-Ohio-722, ¶ 35-37.

{¶ 23}  Accordingly, we sustain appellant's assignment of error.

## IV.  Conclusion

{¶ 24}  Having sustained appellant's sole assignment of error, we reverse the judgment of the Franklin County Court of Common Pleas and remand this matter to that court with instructions to remand to the State Personnel Board of Review for further proceedings consistent with law and this decision.

*Judgment reversed;*
*cause remanded with instructions.*

TYACK and BRUNNER, JJ., concur.

––––––––––

[3] *See* Ohio Adm.Code 124-15-03(B) ("The board may take additional evidence, hear arguments, issue a stay order pending the decision of the board on a motion for reconsideration or remand an appeal to an administrative law judge for further consideration or hearing.").